IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MOLLY RILEY DENNIS,

    Plaintiff,

      v.

FULTON COUNTY, GEORGIA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-6057-TWT

## OPINION AND ORDER

This is a civil rights case. It is before the Court on Defendant Fulton County, Georgia's Motion to Dismiss [Doc. 7], Defendant Patrick Labat's Motion to Dismiss [Doc. 8], and Defendant Judge Shermela J. Williams's Motion to Dismiss [Doc. 14]. For the reasons stated below, Defendant Fulton County's Motion to Dismiss [Doc. 7], Defendant Labat's Motion to Dismiss [Doc. 8], and Defendant Judge Williams's Motion to Dismiss [Doc. 14] are GRANTED, and Defendant Judge Williams's Motion to Stay Discovery [Doc. 15] and Defendant Fulton County's Motion to Stay Discovery [Doc. 26] are DENIED as moot.

## I.   Background[1]

On October 25, 2023, Fulton County Superior Court Judge Shermela Williams concluded a bench trial in a domestic-relations action. (Compl. ¶ 9

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

[Doc. 1-1]). The Plaintiff was present in the courtroom under subpoena as a witness. (*Id.* ¶ 4). As the trial's conclusion neared, Defendant Judge Williams waived closing arguments and moved to her findings of fact and law. (*Id.* ¶ 9).

As Defendant Judge Williams delivered her findings, she addressed a specific event relating to the Plaintiff's testimony. (*Id.* ¶ 10.) Defendant Judge Williams stopped mid-sentence and stated: "Speaking of which, Molly, stand up. Deputy Wallace, put Molly in custody for me. Bring Molly to the front for me please." (*Id.*). The deputy complied, handcuffing the Plaintiff and escorting her to the well of the courtroom. (*Id.*). Defendant Judge Williams accused the Plaintiff of felony offenses related to her entry into her father's apartment. (*Id.*). Defendant Judge Williams then informed the Plaintiff that her conduct warranted a prison sentence of thirty-five years or more. (*Id.*). After doing so, Defendant Judge Williams instructed the deputy to "show her what that cell looks like" and the Plaintiff was removed and detained in a holding cell. (*Id.*). The Plaintiff remained in custody for approximately 15 to 45 minutes before being returned to the courtroom. (*Id.* ¶ 12). The Plaintiff was never charged with any offense, served with a warrant, or afforded notice or a hearing. (*Id.* ¶ 13). Since then, Defendant Judge Williams has admitted material misconduct in connection with these acts in disciplinary proceedings. (*Id.* ¶ 14).

The Plaintiff experienced humiliation, fear, and emotional distress as a result of the detention. (*Id.* ¶ 15). As a result, she filed this action. (*See*

2

*generally* Compl.). Specifically, the Plaintiff brings an action under 42 U.S.C. § 1983 ("Section 1983") to recover for constitutional violations related to (1) unlawful seizure and false imprisonment by all the Defendants, (2) deprivation of liberty without due process by all the Defendants, and (3) failure to train and supervise by Defendants Fulton County and Labat. (*See id.* ¶¶ 18-30). In response, each of the Defendants filed these Motions to Dismiss before the Court. (*See generally* Def. Fulton Cnty. Mot. to Dismiss [Doc. 7]; Def. Labat Mot. to Dismiss [Doc. 8]; Def. J. Williams Mot. to Dismiss [Doc. 14]).

## II.    Legal Standards

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1261 (quotation marks, citation, and brackets omitted). On a facial attack, therefore, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). "Factual attacks, on the other hand, challenge the existence of subject matter

3

jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia*, 104 F.3d at 1261 (quotation marks omitted). On a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 960–61 (11th Cir. 1999) (quotation marks and citation omitted).

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim; however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753

4

F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

Each Defendant makes several arguments in their respective Motions to Dismiss. Because each of these arguments are individual to the party involved, the Court addresses each Motion in turn.

### A. Fulton County's Motion to Dismiss Section 1983 Claims

It is well-established that local governmental entities cannot be held responsible for constitutional violations under a theory of *respondeat superior*. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978), then citing *Pembaur v. Cincinnati*, 475 U.S. 469, 470 (1986)). "It is only when the execution of the government's policy or custom inflects the injury that the municipality may be held liable." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation modified)). To impose Section 1983 liability on a county, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the [county] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.* (citing *City of Canton*, 489 U.S. at 388).

Defendant Fulton County argues that the Plaintiff has failed to state a claim as to any of her Section 1983 counts. First, it argues that, assuming *arguendo* that the Plaintiff suffered a violation of her constitutional rights, she failed to allege any custom or policy that constituted "deliberate indifference to and caused violations of her constitutional rights." (Br. in Supp. of Fulton Cnty.'s Mot. to Dismiss, at 6). Second, it argues that it cannot be liable for the sheriff's training practices under Section 1983. (*Id.* at 7).

Addressing Defendant Fulton County's first argument, the Eleventh Circuit has recognized two methods by which a plaintiff can establish a county's policy: "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329-30 (citing *Monell*, 436 U.S. at 690-91, then citing *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999)). "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is 'the 'moving force [behind] the constitutional violation.''" *Id.* at 1330 (quoting *City of Canton*, 389 U.S. at 389).

Turning to the Plaintiff's Complaint, the Court sees no policy sufficiently alleged to bring a Section 1983 claim against Defendant Fulton County. The

only allegations within the Complaint that come close to alleging as such are found in the Plaintiff's failure to train and supervise count, where she alleges that Defendant Fulton County's failure to train and supervise deputies regarding the constitutional limits of courtroom detentions and unlawful judicial orders "constitutes deliberate indifference to the rights of persons such as Plaintiff and was the moving force behind the violation of the Plaintiff's rights." (Compl. ¶¶ 28-29). But such allegations relate more to legal conclusions rather than factual allegations. And a court is under no obligation to accept legal conclusions within a complaint as true. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

Still, the Plaintiff argues that she need not allege a policy or custom followed by Fulton County to deprive her of her Constitutional rights, citing *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016), as support for this proposition. (Pl.'s Br. in Opp'n to Def. Fulton Cnty.'s Mot. to Dismiss, at 2-3 [Doc. 10-1]). The Plaintiff misinterprets *Hoefling*. There, the Eleventh Circuit considered whether a plaintiff is required to identify and prove that a final policymaker acted on behalf of a municipality within his complaint in order to state a Section 1983 claim. *See Hoefling*, 811 F.3d at 1279-80. The court held that identifying a single final policymaker was not required because such a requirement is an evidentiary standard, not a pleading standard. *Id.* at 1280.

7

This holding does not relate to whether a plaintiff is required to adequately plead a custom or policy followed by a municipality. In fact, the Eleventh Circuit is explicitly clear on this distinction, holding that:

> Although Mr. Hoefling may ultimately have to identify (and provide proof concerning) a single final policymaker in order to survive summary judgment or prevail at trial . . . we do not think he had to name that person in his complaint in order to  to survive a Rule 12(b)(6) motion. *All he needed to do was allege a policy, practice or custom of the City which caused the seizure and destruction of his sailboat. And that, as we detail below, he did.*

*Id.* (citation omitted) (emphasis added).Therefore, the Court ultimately concludes that the Plaintiff fails to state a claim against Defendant Fulton County.

### B. Labat's Motion to Dismiss

Defendant Labat argues for dismissal of all claims under Rule 12(b)(1) and 12(b)(6) against him and his deputies because (1) the Court lacks jurisdiction to consider the Plaintiff's claims against him under the Eleventh Amendment, (2) federal courts do not permit fictitious-party pleading, and (3) Defendant Labat's deputies, even if named, would be entitled to absolute quasi-judicial immunity. (Br. in Supp. of Def. Labat's Mot. to Dismiss, at 1-2 [Doc. 8-1]).[2] The Court considers each argument in turn, beginning with the

---

[2] The Plaintiff has failed to file any response to Defendant Labat's Motion to Dismiss. Under the Local Rules of the Northern District of Georgia, the "[f]ailure to file a response shall indicate that there is no opposition to the motion." L.R. 7.1(B), NDGa. The Court nonetheless will address the merits of Defendant Labat's motion for the sake of completeness. *See Guimmo v. Olsen,*

jurisdictional argument.

### 1.  Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This amendment has been interpreted to bar all lawsuits brought in federal court against a state by a citizen of the United States, no matter which state the plaintiff resides in. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). This is because the key premise behind the Eleventh Amendment is "'a recognition that [S]tates, though part of a union, retain attributes of sovereignty, including immunity from being compelled to appear in the courts of another sovereign against their will.'" *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (citation omitted).

---

701 F. App'x 922, 924 (11th Cir. 2017) (holding that the "district court abused its discretion by interpreting local rule 7.1(B) as permitting it to grant the defendants' motion to dismiss based on the plaintiffs' failure to timely file an opposition brief"); *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632-33 (11th Cir. 1988) (concluding that, although the district court improperly relied on a local rule setting deadlines to respond to rule against the plaintiffs on a motion for summary judgment, the district court properly addressed the motion on the merits later in the order).

The protection of the Eleventh Amendment is not limited to only the State, but also "arms of the State." *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). And such constitutional protections are not abrogated by any action under Section 1983's plain language as neither a state nor its officials are persons under the statute. *See Molette v. Ga.*, 469 F. App'x 766, 768 (11th Cir. 2012) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) and holding that a deputy sheriff is not a person on this basis). For a court to determine whether an official is an "arm of the State," he need not be labeled as a "state officer" or "state official." *Manders*, 338 F.3d at 1308 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (1997). "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* (citation omitted). Four factors are relevant to the inquiry: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309 (citations omitted). The Court considers each factor.

### i.   How Georgia Law Defines a Sheriff

When considering the first factor as applied to Georgia sheriffs, a court must consider how Georgia law defines the sheriff's office. *Id.* at 1319. In

*Manders*, the Eleventh Circuit conducted a deep analysis into Georgia law for this purpose. *See id.* at 1310-12. Looking to the Georgia Constitution, the Eleventh Circuit found that the sheriff's office is an elected constitutional office within the state governmental hierarchy. *Id.* at 1310 (citing Ga. Const. Art. IX, § 1, ¶ 1). The *Manders* court found that, independent of any county or their governing bodies, the sheriff's office is a separate constitutional office under the Georgia Constitution. *Id.* (citing Ga. Const. Art. IX, § 1, ¶ 1, then citing Ga. Const. Art. IX, § 2, ¶ 1(c)(1)).

Taking these findings, the Eleventh Circuit found that Georgia law defines the sheriff as an arm of the State, not as an officer of any county. *See id.* at 1319. It found that, while a sheriff generally performs his duties within the geographical confines of a county, his allegiance and responsibilities arise out of state law rather than a county's function. *Id.*; *see Pellitteri v. Prine*, 776 F.3d 777, 780 (11th Cir. 2015) (holding that the *Manders* court concluded that sheriffs are only "county officers" in the sense that they have a limited geographic jurisdiction). This is because counties generally delegate no powers or duties to sheriffs, and they are not considered employees of their respective countries. *Manders*, 338 F.3d at 1319.

Finally, the Eleventh Circuit considered the sheriff's actions in the context of the lawsuit and whether it falls under this definition of a sheriff. *Id.*

The court noted that "the location where the sheriff's policing function is performed does not automatically transmute the function into a state function or a county function." *Id.* Instead, the inquiry turns on the specific wrongful actions that the sheriff was responsible for. *Id.* The crux of the plaintiff's allegations against the sheriff related to the sheriff's force policy within the confines of a county jail. *See id.* The Eleventh Circuit ultimately concluded that the first factor favored a finding of immunity because the sheriff's force policy was not location-specific and because the State uses the county jail to incarcerate individuals charged with state offenses. *Id.*

Here, there is no difference in state law worth exploring as both *Manders* and the instant case involve allegations of misconduct within Georgia and no relevant amendments to Georgia law have occurred since 2003. Thus, the Court turns to look at the context underlying the Plaintiff's allegations. And the context itself is sparse. The Court understands that Defendant Labat is being sued in his official capacity as a policymaker for the Fulton County Sheriff's Office. (Compl. ¶ 6). The only wrongdoing alleged to be committed by the Sheriff's Office is that "[a] deputy or deputies . . . executed the unlawful detention without independent verification of authority, reflecting the County's failure to train and supervise deputies regarding the constitutional limits of judicial authority." (*Id.* ¶ 16). Defendant Labat's true offense becomes clear in Count III, where the Plaintiff alleges that he "failed to train and

12

supervise deputies regarding the constitutional limits of courtroom detentions and unlawful judicial orders." (*Id.* ¶ 28).

Although the Plaintiff failed to respond to Defendant Labat's arguments at all, the Court does recognize that the alleged wrongdoing did occur in Fulton County in a Fulton County Superior Court. (*See id.* ¶¶ 9-10). But apart from location, Fulton County has nothing to do with the actions taken by the deputies. Although it carries the name of the county, the Fulton County Superior Court and its judges do not derive their power from the county, but rather from the State Constitution. *See* Ga. Const. Art. VI, § 1, ¶ 1 ("The judicial power *of the state* shall be vested exclusively in the following classes of courts: magistrate courts, probate courts, juvenile courts, state courts, superior courts, state-wide business court, Georgia Tax Court, Court of Appeals, and Supreme Court.") The deputy sheriffs staffed at the Fulton County Superior Court fall under the authority of Defendant Labat, who has the exclusive authority to hire, train, supervise, and fire deputy sheriffs. *See Pellitteri*, 776 F.3d at 780. And Defendant Labat derives the power to employ personnel from the State. *Id.* Because these deputy sheriffs are employed by Defendant Labat, who derives his powers from Georgia's laws instead of Fulton County's laws, their actions are state action, not county action. Accordingly, like the courts in *Manders* and *Pellitteri*, the Court concludes that the first factor weighs in favor of Eleventh Amendment immunity.

13

### ii.   Georgia's Control Over the Sheriff

"The second factor of the Eleventh Amendment analysis examines where Georgia law vests control." *Manders*, 338 F.3d at 1320. The Court turns to the *Manders* court's review of Georgia law once again. On this factor, the Eleventh Circuit notes that the Georgia Constitution grants the State legislature exclusive authority to establish and control a sheriff's powers and duties. *Id.* at 1310 (citing Ga. Const. Art. IX, § 1, ¶¶ 3(a)-(b)). In line with this grant, they also note that the Georgia Supreme Court has explained that sheriffs are subject to the control of the Georgia legislature and are not county employees. *Id.* (citing *Bd. Of Comm'rs of Randolph Cnty. v. Wilson*, 260 Ga. 482, 482 (1990)). In contrast, the court notes that Georgia's Constitution grants no legislative power or authority over sheriffs and expressly prevents counties from controlling or affecting the sheriff's office or the personnel thereof. *Id.* (citing Ga. Const. Art. IX, § 2, ¶ 1(c)(1)). And counties do not delegate any of their governmental or police powers to sheriffs and do not attempt to exert any control over the office. *Id.* at 1310-11.

Apart from the Georgia Constitution, the Eleventh Circuit notes that Georgia law grants the State more control over sheriffs. Not only does state law require the annual training of sheriffs (and imposes penalties for a sheriff's noncompliance with annual training), it also grants the Governor broad investigation and suspension powers regarding any misconduct by a sheriff in

14

the performance of any of his duties. *Id.* at 1320-21. Because the State, not the county, trains and holds sheriffs responsible for misconduct, the Eleventh Circuit found that the second factor favors immunity.

The same analysis applies here. The Plaintiff alleges that the deputy sheriffs should have been trained by Defendant Labat to refuse unlawful commands by Judge Williams. (Compl. ¶ 28). But Georgia is responsible for the training and discipline of Defendant Labat. Such training presumably involves instruction on the supervision and training of personnel, and the Plaintiff does not allege otherwise. *See Pellitteri*, 776 F.3d at 781 ("[W]e conclude that the State of Georgia exercises substantial control over a sheriff's personnel decisions, especially in the hiring and firing of deputies."). In any case, where Defendant Labat engaged in misconduct by failing to train or supervise his deputy sheriffs, the State has broad disciplinary power, not Fulton County nor anyone else. Thus, this factor favors Eleventh Amendment immunity for Defendant Labat.

### iii.    Where the Sheriff Derives Funds

"The third factor in the Eleventh Amendment analysis is where the entity derives its funds." *Manders*, 338 F.3d at 1323. This is a closer question than the first two factors. Under Georgia law, each county in Georgia "bears the major burden of providing funds to the sheriff's office, including the salaries of the sheriff and his deputies." *Pellitteri*, 776 F.3d at 782 (citing *id.*).

15

But, as the Eleventh Circuit concluded in *Manders* and *Pellitteri*, this finding is not dispositive because Georgia law mandates that counties set a budget for the sheriff's office. *Id.*; *Manders*, 338 F.3d at 1323 (citing O.C.G.A. §§ 36-9-5, 42-4-2(a), 15-16-20, 45-4-7). Further, while each county sets the total budget for the sheriff's office, it cannot dictate how the sheriff wishes to spend those funds. *Pellitteri*, 776 F.3d at 782 (citing *Manders*, 338 F.3d at 1323).

Because the deputy sheriffs were staffed at the Fulton County Superior Court when the offense occurred, it also becomes important to determine whether the state or the county is responsible for funding superior courts. In this case, it is Fulton County who is responsible for paying "contingent expenses" incurred by the Fulton County Superior Court, but only because it is required by state law. *See* O.C.G.A. § 15-6-24(a). In a similar way, Fulton County cannot control how the Fulton County Superior Court spends the money it provides to fund the court. *See id.* So, whether the Court examines the sheriff's office or the Fulton County Superior Court, the county appears to fund the majority of expenses, but only because the State requires it. Thus, like the Eleventh Circuit in *Pellitteri* and *Manders*, the Court cannot conclude that the third factor weighs in favor of Eleventh Amendment immunity for Defendant Labat.

16

iv.    Responsibility for Judgments Against the Sheriff

"The fourth factor is the source of the funds that will pay any adverse judgment against [Defendant Labat] in his official capacity." *Manders*, 338 F.3d at 1324. "The Supreme Court has emphasized that the 'impetus' for the Eleventh Amendment was the 'prevention of federal-court judgments that must be paid out of a State's treasury.'" *Pellitteri*, 776 F.3d at 782-83 (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994)). "As a result, [the Eleventh Circuit has] stated that 'the presence of a state treasury drain alone may trigger Eleventh Amendment immunity and make consideration of the other factors unnecessary.'" *Id.* at 783 (quoting *Manders*, 338 F.3d at 1328 n. 51).

That is not the case before the Court. As discussed by the Eleventh Circuit, adverse judgments against a sheriff in his official capacity are paid out of the budget of his respective sheriff's office, not by any state or county. *Id.* (citations omitted); *Manders*, 338 F.3d at 1327. This is because Georgia courts almost always conclude that a defendant county cannot be held liable for the tortious actions or misconduct of a sheriff or his deputies and is not required to pay the resulting judgments. *See Manders*, 338 F.3d at 1326-27. And the State is not required to do so either since no state statute requires Georgia to pay out an adverse judgment against a sheriff. *Id.* at 1327. Thus, the only place where a plaintiff could recover for any injury would be from the relevant

17

sheriff's office's budget, which implicates both State and county funds. *Id.*; *Pellitteri*, 776 F.3d at 783. Applied here, this means a judgment against Defendant Labat would be paid out of the budget of the Fulton County Sheriff's Office. Thus, because an adverse judgment would not have to be paid out of the state treasury, this factor weighs against Eleventh Amendment immunity for Defendant Labat. *Pellitteri*, 776 F.3d at 783 (citation omitted); *see Manders*, 338 F.3d at 1327 ("Never has the Supreme Court required an actual drain on the state treasury as a per se condition of Eleventh Amendment immunity" (citing *Regents of the Univ. of Cal*, 519 U.S. at 425, then citing *Hess*, 513 U.S. at 30)).

### v.   Combining the Immunity Factors

Ultimately, the Court concludes that the first two factors weigh in favor of concluding that Defendant Labat is an "arm of the State," the third factor is neutral, and the fourth factor weighs against such a finding. Because the Eleventh Circuit is clear that the fourth factor is not necessary to a finding of Eleventh Amendment immunity, the Court concludes that Defendant Labat has such immunity as an "arm of the state." His office is created by the Georgia Constitution, managed by the Georgia legislature, and trained and disciplined by the Georgia Governor. Insofar as the Plaintiff's allegations are concerned, his deputy sheriffs were staffed by the Georgia judicial system and acted on the command of an officer of that court. Because the entirety of the misconduct

falls under the purview of the State and not Fulton County, it outweighs any finding against Eleventh Circuit immunity on the basis of funding. *See Manders*, 338 F.3d at 1328-29 (concluding similarly); *Pellitteri*, 776 F.3d at 783 (same). Accordingly, because Defendant Labat is entitled to Eleventh Circuit immunity, all the Plaintiff's claims within the Complaint against Defendant Labat are hereby dismissed.

### 2. Quasi-Judicial Immunity

Defendant Labat also argues for the dismissal of the unnamed Defendants that are party to this suit for two reasons. First, Defendant Labat argues that the Plaintiff has not properly pled unnamed defendants (who would be the deputy sheriffs present) in federal court because they cannot be identified under the allegations present in the Complaint. (*See* Br. in Supp. of Def. Labat's Mot. to Dismiss, at 8-9). Second, he argues that even if such defendants were properly pled, the deputy sheriffs would be entitled to absolute quasi-judicial immunity, depriving the Court of subject matter jurisdiction. (*See* Br. in Supp. of Def. Labat's Mot. to Dismiss, at 9-12). Because the Court agrees with Defendant Labat that the unnamed defendants would be entitled to quasi-judicial immunity, the Court need not address the first argument.

"Absolute quasi-judicial immunity derives from absolute judicial immunity." *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (citation

19

omitted). "Judges are absolutely immune from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the "clear absence of all jurisdiction."" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). "Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties 'have an integral relationship with the judicial process.'" *Id.* (citation omitted). "Like judges, these officials must be acting within the scope of their authority." *Id.* Such an inquiry requires a functional analysis. *Id.*

The rationale behind this doctrine is simple: "[a]bsolute immunity for officials assigned to carry out a judge's orders is necessary to [ensure] that such officials can perform their function without the need to secure permanent legal counsel." *Id.* at 556 (citation modified). It is for this reason that many circuits hold that law enforcement officials executing a facially valid court order are protected by absolute quasi-judicial immunity. *Id.* at 555 (citations omitted). "'Facially valid' does not mean 'lawful.' An erroneous order can be valid.'" *Id.* at 556 (citations omitted). When a court (1) has jurisdiction over the parties and the subject-matter, (2) issues a writ which is fair on its face, (3) issues the writ in the regular course of judicial proceedings by that court, and (4) orders the officer of the court to obey, then the implementing officer is protected when executing the court's mandate. *Id.* (quoting *Matthews v. Densmore*, 109 U.S. 216, 218 (1883)). The same applies when a Section 1983 action is brought

20

against a law enforcement officer.

The facts before the Eleventh Circuit in *Roland* mirror the facts before the Court. A judge was adjudicating a dispute between certain individuals and had jurisdiction over the matter. *Id.* at 556. After charging one of the parties in the course of the dispute with a crime, the judge verbally ordered a sheriff to incarcerate that party for their failure to comply with the judge's order. *Id.* at 557. Whether such an order was valid or not, the Eleventh Circuit held that the sheriff was protected by quasi-judicial immunity for following the judge's verbal instructions. *Id.* The court found that it would be "simply unfair" to spare the judges who give orders while punishing the officers who obey them. *Id.* (citation omitted). Accordingly, because the sheriff acted pursuant to a valid oral judicial order, the court held that the sheriff was entitled to quasi-judicial immunity. *Id.*

Here, the Plaintiff's detention occurred in the course of a regular judicial proceeding where Defendant Judge Williams was discussing her findings of fact and law at the conclusion of a bench trial. (Compl. ¶ 9). The Plaintiff does not argue that the Fulton County Superior Court did not have jurisdiction to hear the dispute in the first place or to arrest a witness in the course of the trial. At some point, Defendant Judge Williams ordered the officers of the court to arrest the Plaintiff. (*Id.*). Now, because the deputy sheriffs complied, the Plaintiff brings Section 1983 claims against them.

In both scenarios, there was no warrant, charge, or contempt order leading to an officer of the court arresting the plaintiff. (*Id.*). Both orders appeared facially valid because a law enforcement officer is not expected to run to his own counsel before complying with a judicial officer's order. Indeed, Defendant Judge Williams went so far as to accuse the Plaintiff of felony offenses which likely made the law enforcement officers more comfortable in their decisions to comply. (*Id.* ¶ 11). Like the Eleventh Circuit in *Roland*, the Court finds it unfair to punish law enforcement officers for a Judge's potential unlawful actions. Thus, the Court holds that the unnamed defendants are entitled to quasi-judicial immunity. All claims against such defendants are hereby dismissed for want of subject-matter jurisdiction.

## C. Judge Williams's Motion to Dismiss

Defendant Judge Williams argues for dismissal of all claims against her under the doctrine of judicial immunity. (Br. in Supp. of Def. J. Williams's Mot. to Dismiss, at 5 [Doc. 14-1]). Because judicial immunity is an affirmative defense, it does not deprive this Court of subject matter jurisdiction and should be considered on Rule 12(b)(6) grounds instead of 12(b)(1) grounds. *Mordkofsky v. Calabresi*, 159 F. App'x 938, 939 (11th Cir. 2005) (citing *Boyd v. Carroll*, 624 F.2d 730, 732-33 (5th Cir. 1980)). [3] "Judges are entitled to absolute judicial

---

[3] The Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit made before the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

22

immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (citation modified). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction. *Id.* (citation modified). In other words, a judge can enjoy judicial immunity when (1) she is acting in her judicial capacity and (2) she did not act in the clear absence of all jurisdiction *See id.*

The question of whether Defendant Judge Williams acted in the clear absence of all jurisdiction is an easy one here. To satisfy the jurisdictional element of judicial immunity, a defendant judge alleged of wrongdoing in the course of a proceeding must have first had subject-matter jurisdiction to hear the dispute. *Dykes v. Hosemann*, 776 F.2d 942, 947 (11th Cir. 1985) (discussing the Supreme Court's decision in *Stump*). Under the Georgia Constitution, the Superior Courts of Georgia are courts of general jurisdiction, which includes jurisdiction over divorce proceedings. *See* Ga. Const. Art. XI, § 1, ¶ 1. Additionally, under Georgia law, a superior court has the authority to imprison individuals to punish contempt. *See* O.C.G.A. § 15-6-8(5). Pursuant to this authority, Defendant Judge Williams exercised her jurisdiction to hear a domestic relations matter and imprison the Plaintiff. It is irrelevant whether Defendant Judge Williams acted in excess of her proscribed authority. *See Sibley*, 437 F.3d at 1070. Although the Plaintiff argues that a Superior Court's

23

general jurisdiction is not enough to determine whether a judge acts in the absence of all jurisdiction, (Pl.'s Br. in Opp'n to Def. J. Williams's Mot. to Dismiss, at 8 [Doc. 19]), the Plaintiff provides no judicial authority that supports her position. Thus, the Court concludes that Defendant Judge Williams did not act in the absence of all jurisdiction.

Settling that element of judicial immunity, the Court now turns to the issue of whether Judge Williams was engaged in a judicial act. "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley*, 437 F.3d at 1070 (citation modified).

The Eleventh Circuit recently emphasized the importance of divorcing a judge's motivations from considering whether his or her act was a judicial one in *McCullough v. Finley*, 907 F.3d 1324 (11th Cir. 2018). There, the plaintiffs brought suit against certain state municipal judges along with other government officials, alleging that the judges and officials worked together to jail individuals who could not pay their parking tickets, creating a "modern day debtors' prison." *See id.* at 1328-29. They alleged that the goal of this conspiracy was to increase municipal revenue and to coerce the plaintiffs' labor

24

while they were in prison. *Id.* at 1328. The defendants filed motions to dismiss and asserted several immunity defenses, such as judicial immunity. *Id.* at 1329. Considering the allegations of the plaintiffs' complaint, the district court held that the judges' acts were not judicial in nature because "municipal revenue generation is not a function normally performed by a judge." *Id.* at 1331.

In reviewing the decision, the Eleventh Circuit detailed the scope of the inquiry into whether a judge's act is a judicial act. It noted that a court should "look at the nature and function of the act, not the propriety of the act itself, and consider whether the nature and function of the particular act is judicial." *Id.* at 1330-31 (citing *Mireles v. Waco*, 502 U.S. 9, 13 (1991)). "For example, [a court asks] not 'whether civil incarceration was appropriate' in a specific case but instead 'whether ordering civil incarceration is a judicial activity.'" *Id.* at 1331 (quoting *Sibley*, 437 F.3d at 1071). In other words, the appellate court emphasized that "[a] judge's motivation is *irrelevant* to determining whether his act was judicial." *Id.* (emphasis added).

Turning to reviewing the district court's determination, the Eleventh Circuit concluded that the court erred when it based its decision on the motivation of the defendant judges instead of the nature and function of their acts. *Id.* The court explained that "even if the judges were motivated to generate municipal revenue, their acts 'do[ ] not become less judicial by virtue

25

of an allegation of malice or corruption of motive.'" *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988) (alterations in original)). After making this conclusion, the Eleventh Circuit reviewed the conduct of the defendant judges under the four factors discussed prior to this Court's review of *McCullough* and reached the same conclusion. *See id.* at 1331-32. Thus, with this guidance from *McCullough*, the Court reviews the four factors.

The first factor requires the Court to consider whether a judge's acts involve a normal judicial function. *Sibley*, 437 F.3d at 1070 (citation modified). Georgia grants their courts the power to imprison individuals for no more than 20 days for contempt. *See* O.C.G.A. § 15-6-8(5). Additionally, Georgia trial courts have the inherent authority "to preserve and enforce order in its immediate presence and, as near thereto as is necessary, to prevent interruption, disturbance, or hindrance to its proceedings." *Robinson v. Becker*, 265 Ga. App. 692, 695 (2004) (citation modified). This power is derived in part from Georgia law, which allows the superior courts to exercise "such other powers, not contrary to the Constitution, as are or may be given to such courts by law." O.C.G.A. § 15-6-8(6). It follows that the detention of the Plaintiff by Judge Williams is an exercise of such a normal judicial function. Whether such a detention was motivated by extrinsic issues pertinent to Judge Williams is irrelevant to the inquiry. What is relevant is that Defendant Judge Williams directed the arrest of the Plaintiff during court proceedings, which are within

26

her judicial powers.

But the Plaintiff argues that Defendant Judge Williams's acts were not an exercise of her contempt powers because she failed to follow proper contempt procedures to exercise that power. (*See* Pl.'s Br. in Opp'n to Def. J. Williams's Mot. to Dismiss, at 8-11). She also argues that her detention was not a valid exercise of authority to maintain courtroom control. (*See id.* at 11-12). These arguments misconstrue the nature of the Court's inquiry. Thus, the first factor favors immunity.

So too does the second factor. The second factor asks a court to consider whether the judicial act was performed within a judge's chambers or in open court. *Sibley*, 437 F.3d at 1070 (citation modified). There is no true dispute on this issue. The Plaintiff alleges that Defendant Judge Williams directed her detention in the middle of delivering her findings of fact and law in a domestic relations dispute. (Compl. ¶ 9). She was then escorted to the well of the courtroom in open court and then detained. (*Id.* ¶ 10). Thus, the events transpired in open court, which favors a finding of judicial immunity.

The third factor asks whether the alleged wrong centers around a case pending before a judge. *Sibley*, 437 F.3d at 1070 (citation modified). The Eleventh Circuit in *McCullough* found that this factor favored a finding of judicial immunity because the plaintiffs were required to "sit-out his or her fines during a pending case." 907 F.3d at 1332. Similarly, Defendant Judge

27

Williams directed the arrest of the Plaintiff during the course of the domestic relations trial. (Compl. ¶¶ 9-10). Thus, the third factor favors a finding of judicial immunity.

Finally, the fourth factor asks whether the confrontation arose directly out of contact with the judge in her judicial capacity. *Sibley*, 437 F.3d at 1070 (citation modified). The Eleventh Circuit in *McCullough* answered this question in the affirmative because the judges' erroneous actions stemmed from when the plaintiffs were before the court as part of criminal proceedings. 907 F.3d at 1332. Here, while the Plaintiff was not a party to the dispute, she was a witness during the course of a domestic relations trial. (*See* Compl. ¶¶ 9, 10). Additionally, the detention occurred while Judge Williams was concluding the trial. (*See id.* ¶ 9). Thus, because the facts show that the arrest occurred during the course of a dispute before the judge, this final factor favors finding for judicial immunity.

Taking these four factors together, the Court concludes that Judge Williams is entitled to judicial immunity because her actions were judicial acts. Although Defendant Judge Williams has likely engaged in conduct that is unbecoming of her duty to uphold the laws of Georgia and the Constitution, the Court is bound by the Eleventh Circuit's decision in *McCullough*. Because the Court is limited in its inquiry into whether the wrongdoing alleged against Judge Williams is a judicial act, the Court has no choice but to determine that

28

she is entitled to judicial immunity.

### D. Leave to Amend

Generally, the dismissal of a complaint with prejudice bars a plaintiff from amending his pleadings and from pursuing the same action against the same defendants. *See McNair v. Johnson*, 143 F.4th 1301, 1306 (11th Cir. 2025) (explaining the consequences of a dismissal without prejudice). "Dismissal with prejudice is proper when a more carefully drafted complaint would not state a claim for relief." *Arthur v. JP Morgan Chase Bank*, NA, 569 F. App'x 669, 686 (11th Cir. 2014).

District courts have discretion in determining whether to allow a plaintiff to amend his pleadings. *See Pinnacle Advert. and Mktg, Grp., Inc. v. Pinnacle Advert. and Mktg. Grp., LLC*, 7 F.4th 989, 999-1000 (11th Cir. 2021) (stating that the standard of review for a district court's decision to grant leave to amend is abuse of discretion); *but see Eiber Radiology, Inc. v. Toshiba America Medical Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) (noting that a district court's discretion to dismiss a complaint without leave to amend is "severely restricted" by Federal Rule of Civil Procedure 15(a)(2), which requires leave to amend be freely given when justice so requires). The Eleventh Circuit generally encourages district courts to exercise their discretion in favor of allowing plaintiffs to amend their pleadings. *Id.* at 1000. But where amendment to the complaint would be futile or unfairly prejudicial, a district

29

court may dismiss the complaint with prejudice. *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1347 (11th Cir. 2017).

Here, the Plaintiff asks the Court for leave to amend her Complaint to address Defendant Fulton County's Motion to Dismiss. (Pl.'s Br. in Opp'n to Def. Fulton Cnty.'s Mot. to Dismiss, at 3). Addressing this request first, the Court finds that permitting amendment is proper. The Court granted Defendant Fulton County's Motion to Dismiss because the Plaintiff failed to identify any policy or custom that Defendant Fulton County was responsible for to bring a Section 1983 claim against it. With proper amendment, such a pleading deficiency may be remedied. Accordingly, the Court grants leave to amend in that case.

But the Plaintiff does not request leave to amend for Defendant Labat or Defendant Judge Williams's Motions to Dismiss. This is for good reason. The Court dismissed Defendant Labat, his deputies, and Defendant Judge Williams under Eleventh Amendment immunity, quasi-judicial immunity, and judicial immunity. No amount of repleading will change the Court's decision as the fundamental actions underlying the Complaint lend itself to these rulings. Justice is not served by prolonging the inevitable. Because no additional modifications will imbue life into these claims, the Court will not grant the Plaintiff leave to amend as to these Defendants.

30

## IV.   Conclusion

For the foregoing reasons, Defendant Fulton County's Motion to Dismiss [Doc. 7], Defendant Labat's Motion to Dismiss [Doc. 8], and Defendant Williams's Motion to Dismiss [Doc. 14] are GRANTED and Defendant Williams's Motion to Stay Discovery [Doc. 15] and Defendant Fulton County's Motion to Stay Discovery [Doc. 26] are DENIED as moot.

Defendant Fulton County's Motion to Dismiss [Doc. 7] is GRANTED without prejudice. If the Plaintiff does not file an Amended Complaint within fourteen (14) days of this Order, this dismissal will be with prejudice.

Defendant Labat's Motion to Dismiss [Doc. 8] and Defendant Judge Williams's Motion to Dismiss [Doc. 14] are GRANTED with prejudice. The Clerk is directed to enter judgment in favor of Defendants Labat and Williams.

SO ORDERED, this ___6th___ day of July, 2026.

THOMAS W. THRASH, JR.
United States District Judge

31